Saul Laurence WELLMAN, Nathan Kaplan, a/k/a Nat Ganley, Thomas De Witt Dennis, Jr., Philip Schatz, Helen Mary Winter, and William Allan, Appellants,

v.

UNITED STATES of America, Appellee.

No. 12237.

United States Court of Appeals Sixth Circuit.

March 25, 1958.

reversed the Yates case. Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356. On June 24, 1957, the Supreme Court granted certiorari in the present case and ordered, "The judgment of the Court of Appeals for the Sixth Circuit is vacated and the case is remanded for consideration in light of Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064 [1 L.Ed.2d 1356]." 354 U.S. 931, 77 S.Ct. 1403, 1 L.Ed.2d 1535. Following the remand, the case has been reargued before this Court for the purposes of our reconsideration.

The indictment, which was returned on September 22, 1952, charged the appellants with conspiring to violate the Smith Act by (1) wilfully advocating and teaching the duty and necessity of overthrowing the government of the United States by force and violence, with the intention of causing said overthrow as speedily as circumstances would permit, and (2) wilfully organizing as the Communist Party of the United States a group of persons who teach and advocate the overthrow and destruction of the government of the United States by force and violence, with the intent of causing said overthrow as speedily as circumstances would permit.

 Among the numerous defenses made by the appellants was the contention that so much of the indictment as charged a conspiracy to organize the Communist Party was outlawed by the applicable three year Statute of Limitations. Section 3282, Title 18 U.S.Code. They pointed out that the Communist Party of the United States came into being at the convention in New York in July 1945 and that it was fully "organized" prior to September 22, 1949, which was three years prior to the return of the indictment. The District Judge rejected this contention and instructed the jury that steps wilfully and knowingly taken by the appellants between September 22, 1949, and September 22, 1952, to promote the objectives of the Communist Party of the United States, including the organizing of any club or division expansion of existing clubs, or holding

Ernest Goodman, Detroit, Mich., Goodman, Crockett, Eden & Robb, George W. Crockett, Jr., Detroit, Mich., on brief, for appellants.

William G. Hundley, Washington, D. C., Fred W. Kaess, Detroit, Mich., John J. Keating, Jr., Lawrence K. Bailey, Washington, D. C., on brief, for appellee.

Before McALLISTER, MILLER and STEWART, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

Appellants were tried and convicted in the District Court under a single count indictment which charged them of conspiring to violate the Smith Act, Sections 2385 and 371, Title 18 U.S.Code. On appeal the judgment was affirmed by this Court on November 18, 1955. Wellman v. United States, 227 F.2d 757. In affirming the judgment we relied to some extent on Yates v. United States, 9 Cir., 225 F.2d 146, certiorari granted Richmond v. United States, 350 U.S. 860, 76 S.Ct. 105, 100 L.Ed. 763. Application for writ of certiorari was made in this case, but was not acted upon by the Supreme Court pending the Court's consideration of the Yates case. On June 17, 1957, the United States Supreme Court

classes, giving speeches or distributing literature teaching the Marxism-Leninism brand of Socialism was "organizing" or "helping to organize" the Communist Party within the meaning of the statute. On review we affirmed the ruling, stating that in our opinion the purpose of the Smith Act was aimed at more than the initial meeting of such a group but was also meant to prevent the expansion, growth and perfection of such an organization through the recruiting and training of new members and by making the necessary changes from time to time to ultimately produce the kind of an organization necessary to accomplish its objectives. We pointed out that this was in accord with the view taken by the Court of Appeals for the Ninth Circuit in the Yates case.

The Supreme Court in its reversal of the Yates case [354 U.S. 298, 77 S.Ct. 1069] sustained the contention of the appellants therein who claimed that the word "organize" meant to "establish," "found," or "bring into existence" and that in this sense the Communist Party was organized by 1945 at the latest, with the result that the three years Statute of Limitations had run on the "organizing" charge and required the withdrawal of that part of the indictment from the jury's consideration. That construction of the statute, which we are required to follow in our construction of the same statute in this case, necessarily means that both the District Court and this Court were in error in construing the statute as we did and in refusing to require the withdrawal of that part of the indictment from the jury's consideration. For that reason, the judgment of the District Court is reversed.

■ The Government contends that this error was not prejudicial as it was in the Yates case, in that in this case the error was not carried over into the instructions to the jury, which instructions, as actually given, were not erroneous even when tested by the ruling in Yates with respect to the word "organize." The argument is that the District Judge charged the jury that there was only one crime charged, namely a conspiracy with a double objective, the violation of two sections of the Smith Act, one dealing with organizing and the other dealing with advocacy, and that in order for the jury to convict, it must find a conspiracy to violate *both* sections. Accordingly, it is argued that the verdict represented a finding that the appellants conspired in both ways and the inclusion of the unnecessary organizing objective was harmless error. The Government recognizes the further ruling in Yates that with respect to the necessary overt act there was no way of knowing under the instructions in that case whether the overt act found by the jury was one which it believed to be in furtherance of the "advocacy" rather than the "organizing" objective of the alleged conspiracy, and since it was impossible to tell which ground the jury selected, the verdict must be set aside. It is argued that in the present case the jury was instructed that it was necessary to find only one overt act, which act was in furtherance of *both* objectives of the conspiracy, which put a stricter burden of proof upon the Government than is required in the usual conspiracy case where it is sufficient if the jury find an overt act in furtherance of any of several objectives. We are of the opinion that the instruction given with respect to the overt act is not reasonably subject to this construction. It pointed out that the crime was completed "when an overt act to effect *the object* of the conspiracy is done by at least one of the conspirators" (Emphasis added), and several times thereafter used the words "the object" or "the objective" of the conspiracy. The fact that the word "the" was used rather than the word "an" as used in Yates in connection with the object of the conspiracy, is not as material as is the use of the singular instead of the plural in connection with the object or objectives of the conspiracy. In view of the intermingling of the two issues of "organizing" and "advocating" and the evidence offered in support of both, throughout this long trial of many weeks, we think the error, under the Su-

preme Court's ruling, with respect to the meaning of the word "organize" was a material and prejudicial one, the effect of which was not corrected by the instructions given.

Since this case must be reversed for the error above pointed out, and following the procedure used by the Supreme Court in the Yates case, we will not attempt on this reconsideration to determine the sufficiency of the evidence to sustain the verdict, but will attempt to determine whether there are one or more of the appellants against whom "the evidence in this record would be palpably insufficient upon a new trial" so as to require a judgment of dismissal by the District Judge. Yates v. United States, supra, 354 U.S. at pages 327–328, 77 S.Ct. at page 1081. As there pointed out, in doing this we do not apply the rigorous standards of review which we would be required to apply in reviewing the evidence if any of these appellants are convicted upon a retrial. Rather, we scrutinize the record to see whether there is any one or more of the appellants as to whom acquittal is unequivocally demanded. This evaluation of the evidence must be with reference to the requirement pointed out in the Yates case, that "those to whom the advocacy is addressed must be urged to do something, now or in the future, rather than merely to believe in something," or as expressed in another way, that the advocacy by the appellants was of a kind calculated to "incite" persons to action. Mere advocacy of an abstract doctrine, as distinguished from advocacy of action, was there held to be insufficient.

As a preliminary matter, we make this observation. The distinction relied upon in Yates between advocacy of action and mere advocacy of an abstract doctrine was the law applicable to Smith Act cases when this case was tried and previously reviewed by this Court. As stated in our opinion on that review, the Supreme Court in Dennis v. United States, 341 U.S. 494, 511, 71 S.Ct. 857, 95 L.Ed. 1137, had stated that the mere teaching and advocacy of the forbidden doctrine did

not by itself constitute the crime, but that to be punishable the teaching and advocacy must be "by language reasonably and ordinarily calculated to incite persons to such action." Wellman v. United States, 227 F.2d at page 773. On that review appellants contended that there was no evidence showing that their advocacy partook of the character of incitement within the ruling in the Dennis case. We rejected the contention, stating: "An overall consideration of the activities of the Communist Party and its teachings to its members in secret Party schools strongly supports the reasonable conclusion that the Party was not conducting 'a seminar in political theory,' but that the principles of Marxism-Leninism were being taught as a guide to action which was expected to follow at a later propitious time." We referred to the concurring opinion of Justice Frankfurter in the Dennis case in which he expressed the view that there is no divining rod by which we may locate "advocacy," that exposition of ideas readily merges into advocacy, and that in the case under consideration the object of the conspiracy before the Court was so clear that the chance of error in saying that the defendants conspired to advocate rather than to express ideas was slight. Dennis v. United States, supra, 341 U.S. at pages 545–546, 71 S.Ct. at pages 885–886. At that time we were applying the rigorous standards of review applicable in reviewing a judgment of conviction rather than the more liberal standards applicable to the present review in which we seek to determine merely whether such evidence was so lacking in substance as to unequivocally demand an acquittal. On the other hand, in our present review we are required under Yates to put aside as against all appellants the evidence relating to the "organizing" aspect of the alleged conspiracy, except insofar as it bears upon the advocacy charge. Accordingly, we will reconsider our ruling in the light of the recent discussion of the question by the Supreme Court in Yates, eliminating the evidence bearing exclusively on "organiz-

ing" but using the more liberal standard referred to in that case.

A similar evaluation of the evidence in Smith Act cases has been made in the following cases since the ruling in Yates. In Bary v. United States, 10 Cir., 248 F.2d 201, the Court reversed the judgment of the District Court for its erroneous ruling on the issue of "organizing," similar to the ruling in the present case, but ruled unanimously that the evidence was sufficient to sustain the jury's finding of advocacy of action. In United States v. Silverman, 2 Cir., 248 F.2d 671, the Court by a divided vote of two to one reversed the conviction and ordered the district court to enter judgment acquitting all the appellants. The dissenting member of the Court was of the opinion that the evidence was sufficient to sustain the jury's finding of advocacy of action. In United States v. Kuzma, 3 Cir., 249 F.2d 619, the Government conceded that the "organizing" charged was barred by the statute of limitations and that the evidence was insufficient to make a case against two of the appellants, which concessions were approved and adopted by the Court. The Court, in a unanimous opinion, ruled that the evidence was also insufficient as to two other appellants, but was sufficient to justify a new trial as to the five remaining appellants. In Fujimoto v. United States, 251 F.2d 342, the Court of Appeals for the Ninth Circuit reversed the judgments of conviction and held unanimously that judgments be entered in favor of all defendants. These cases, which have had our consideration, contain a helpful discussion of the issue.

█ The opinion in Yates points out that evidence as to certain facts, standing alone, is not sufficient to take the case to the jury. The fact that the appellants had long been members, officers, or functionaries of the Communist Party of Michigan, standing alone, is insufficient to make out a case against them. Lawful activity in the Party without a showing of statements made by them in advocacy of forcible action, or being present when someone else made such statements, is also insufficient. Evidence of a general program of educational activity by the Communist Party which included advocacy of violence only as a theoretical matter, is not sufficient. Prophecy, as distinguished from advocacy, is also insufficient.

█ On the other hand, evidence in Yates tying the indicted party to Party classes in the San Francisco area, where there occurred what might be considered to be the *systematic* teaching and advocacy of illegal action which is condemned by the statute, was considered sufficient. The Court pointed out that it might be found that one of the purposes of such classes was to develop in the members of the group a readiness to engage at the crucial time, perhaps during war or during attack upon the United States from without, in such activities as sabotage and street fighting in order to divert and diffuse the resistance of the authorities and if possible to seize local vantage points. The Court also said that it was not prepared to say that it would be impossible for a jury to find that advocacy of action was also engaged in when individuals who were thought particularly trustworthy, and suitable for violent tasks were taken into an "underground" apparatus and there instructed in tasks which would be useful when the time for violent action arrived. The Court also said that an indicted party may either have made statements, or apparently approved statements made in his presence, which a jury might take as some evidence of their participation with the requisite intent in a conspiracy to advocate illegal action. We construe both Dennis and Yates to hold that advocacy of *immediate* action is not necessary, but that it is sufficient if there is advocacy of action at a crucial time in the future when it would be decided that the time for action was ripe and success seemed possible. Dennis v. United States, supra, 341 U.S. at pages 509–510, 71 S.Ct. at pages 867–868; Yates v. United States, supra, 354 U.S. at pages

323–324, 325, 77 S.Ct. at pages 1079–1080; Wellman v. United States, supra, 6 Cir., 227 F.2d at page 764. As also pointed out in Wellman, evidence that the Party concentrated its recruiting and organizational activities among workers in the mass production industries has a bearing on the issue. 227 F.2d at page 773.

In Wellman we summarized the evidence with respect to the membership and activities of the appellants in the Communist Party and as supporting the contention that they believed in and taught Marxism-Leninism, that they taught and advocated the tenets of the Communist Manifesto and the writings of Stalin and Lenin, and that the proper interpretation of such views and documents was that the Communist Party planned to gain control of the Government and taught that this objective must be accomplished through force and violence rather than by the ballot. 227 F.2d 769, 771. We referred to some of the documents and literature of the Communist Party as teaching that the only way the Party could achieve its objectives was by revolutionary violence against the burgeois, by a proletarian revolution, by establishing its own political rule—the dictatorship of the proletariat—which must crush the resistance of the exploiters and create a new classless, Communist Society. 227 F.2d 772. We pointed out that Party classes and training schools taught that the Government will not collapse of its own power but must be seized by the workers through a resort to force and violence, and that the Party concentrated its recruiting and organizational activities among workers in the mass production industries. 227 F.2d 772–773. Those conclusions with respect to the objectives of the Communist Party, are not affected by Yates. Our question is thus narrowed to whether appellants merely urged the members of the Party to believe in these objectives or advocated action presently or in the future for the purpose of attaining them.

All of the appellants were members of the Michigan State Board. In 1948 the Board decided to start a Party School to be known as the Michigan School of Social Science. This school afforded the Party an "opportunity for the rapid expansion and improvement of the *systematic* Marxist education of our membership." (Emphasis added.) All of the appellants, except Wellman, were instructors. Wellman, who was the Party's National Auto Coordinator in Michigan, urged "auto comrades" to attend the school.

Appellant Ganley taught a class in "Political Economy" during 1949–1950, in which he instructed the students that the people of this country were exploited and were beginning to realize it, that there was a forthcoming depression and it would cause the people to think more of this and that they would, for that reason, be ready to take over themselves. Only first names were used in registering the students and in calling the roll. In this connection, we pointed out in Wellman that the appellants used various devices for concealing their activities and real objectives. 227 F.2d 773.

Appellant Allan taught a course in "History of the American Labor Movement." He read from a book about a great strike in Chicago in the 1880's in which two men, Parsons and Spies, were involved and were subsequently executed for their participation in a bomb throwing. Allan commented that "these men were incendiary in both their actions and their deeds, and it would be well for us to take a lesson from them in our action." Allan taught that there was no such thing as cooperation between labor and capital, and that it was either a victory for one or the other, and eventually a victory for labor. In another course Allan instructed the students that they were being schooled for the purpose of being leaders in the movement, and for the purpose of showing them how to successfully bring on a strike—after finding where the power was, "pull the pin and stop the operation completely."

Appellant Dennis taught a course entitled "Negro Liberation Movement." He instructed the students that the negroes in the southeastern portion of the United States constituted a nation within a nation and were entitled to their own government, and that negro self-rule in the South could only be accomplished through the leadership of the Communist Party.

All of the appellants were present and heard a report by the State Chairman of the Party in April 1950 on industrial concentration, who said "that we must continue our struggle to defeat capitalism and to establish socialism—that this struggle must be intensified, because capitalism is in its dying state."

Appellants Schatz and Allan participated in the planned reorganization of the membership into small groups and for the continued carrying out of the Party program in the event the party had to go underground, and for the abandonment of known Communist meeting places. In 1951 the State Board adopted a plan of reorganization which would insure that the Party would function under any and all conditions. Under the plan Schatz and Dennis were to be responsible for certain designated regions. In 1951 appellants Wellman, Schatz and Dennis disappeared into the underground, living away from their homes and families, which status continued until the time of their arrest.

In our opinion, the evidence shows far more than mere advocacy of Communism as an abstract doctrine. Considering the purposes and objectives of the Communist Party, the leadership of the appellants in the Party in Michigan, their sponsorship of and connection with the Michigan School of Social Science for the purpose of *systematic* teaching of illegal action condemned by the statute, their apparent approval of the plan of industrial concentration, the formulation of plans to insure the continued carrying out of the Party program in the event the Party had to go underground, and the actual underground status of certain of the appellants, we are not prepared to say, using the words of the Supreme Court opinion in Yates, that it would be impossible for a jury, resolving all conflicts in favor of the Government and giving the evidence as to activities referred its utmost sweep, to find that advocacy of action was engaged in when the group involved was thought particularly trustworthy, dedicated and suited for violent tasks.

■ Under the circumstances, it is not necessary to determine whether the instructions of the District Judge were sufficient to convey to the jury that they must find that the advocacy was of a kind calculated to "incite" persons to action. Appellants contend that the instructions in this case failed, in the same way as the instructions in Yates failed, to satisfy the requirement referred to in Yates that "those to whom the advocacy is addressed must be urged to do something, now or in the future, rather than merely to believe in something." 354 U.S. at page 325, 77 S.Ct. at page 1080. The Government points out that the instructions in this case, considered as a whole, did more to bring that necessary element to the consideration of the jury than was done in Yates. In our previous consideration of this appeal we were of the opinion that the instructions were sufficient. See 227 F.2d at pages 773, 776. However, in the retrial of this case, the District Judge should remove any question on this point by specifically instructing the jury as to this difference, and of the necessity of finding that the advocacy be a kind calculated to "incite" persons to action. As pointed out in the dissenting opinion of Justice Clark in the Yates case (354 U.S. at page 350, 77 S. Ct. at page 1093), the charge given by the trial judge on this issue in Dennis v. United States, 341 U.S. 494, 511–512, 71 S.Ct. 857, 95 L.Ed. 1137, has received the stamp of approval of the Supreme Court.

The judgments are reversed and the case remanded to the District Court for a new trial as to all the appellants.

STEWART, Circuit Judge (concurring).

Agreeing that these convictions must be set aside for the reasons stated in Judge MILLER'S opinion, agreeing too that the way should be left open for a new trial of all the appellants, I append this separate statement only because of my belief that some of the factors relied upon by the majority in reaching the latter conclusion are impermissible in view of what was said in the Yates case. 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356. My concurrence in that part of today's decision which holds that the appellants are not at this stage of the proceedings entitled to directed judgments of acquittal is, therefore, based upon reasons somewhat different from those stated by my colleagues.

In our former review we upheld the conviction of these appellants on both the organizing and advocating phases of the conspiracy charge. In that decision considerable reliance was placed upon evidence of the tenets and teachings of the Communist Party to connect the defendants with illegal rather than abstract advocacy. The present majority opinion again relies upon this evidence, or so much of it as relates to the advocacy charge, to show the character of the utterances alleged to have been made. I do not agree with the statement that, "Those [prior] conclusions with respect to the objectives of the Communist Party, are not affected by Yates." (supra, 253 F.2d 607). In Yates it was held that the illegal conspiracy could not be proved by showing the defendants' identification with the Party and inferentially with its tenets. As stated in that opinion, "We must, then, look elsewhere than to the evidence concerning the Communist Party as such for the existence of the conspiracy to advocate charged in the indictment." 354 U.S. at page 330, 77 S.Ct. at page 1083.

Moreover, the effort to discern the germ of illegal advocacy in a handful of equivocal statements culled from the present record seems to me an unrewarding one. Standing alone, these statements, with the possible exception of those attributed to appellant Allan, hardly amount to the incitement to action of the kind defined in Yates. At this stage of the proceedings, however, it is unnecessary to find direct evidence of actual illegal speech to warrant the disposition which we have determined. It is enough that the circumstances do not dispel the possibility "that advocacy of action was also engaged in when the group involved was thought particularly trustworthy, dedicated, and suited for violent tasks." Yates, 354 U.S. at page 332, 77 S.Ct. at page 1084.

A comparison of the circumstances weighing against the present appellants with those circumstance stressed in denying acquittal to nine of the defendants in Yates reveals a striking similarity. Like the Yates defendants, the present appellants were associated, although more closely, with the founding and operation of a school where Marxist theory and technique comprised the entire curriculum. The school was closed to the public. To be sure, the statements in the present record attributed to the defendants in their teaching were equivocal and, taken singly, susceptible of a Constitutionally protected interpretation. However, viewed as a consistent pattern and considered along with the appellants' alleged preparation to go "underground," and their efforts to concentrate membership in the basic industries, the evidence is sufficient to justify this court in affording the government an opportunity to retry the appellants with the knowledge that all of its evidence must be channeled into the "advocacy" rather than the "organizing" charge. For that reason I agree with the majority in concluding that the record now before us is not too tenuous to justify the retrial of the appellants under proper legal standards. 354 U.S. at page 332, 77 S.Ct. at page 1084.