**Saul L. WELLMAN, Appellant,**

**v.**

**Sumner G. WHITTIER, Individually and as Administrator of Veterans' Affairs, United States Veterans Administration, Appellee.**

**No. 14131.**

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 5, 1958.

Decided June 19, 1958.

Petition for Rehearing Denied Sept. 12, 1958.

1. Sitting by designation pursuant to provisions of Sec. 291(a), Title 28, U.S.Code.

2. Rule 9(d) of the United States District Court for the District of Columbia reads as follows: "If at the time set for hear-

Mr. Osmond K. Fraenkel, New York City, with whom Mr. James H. Heller, Washington, D. C., was on the brief, for appellant.

Mr. B. Jenkins Middleton, Attorney, Department of Justice, with whom Asst. Atty. Gen. George C. Doub, Messrs. Oliver Gasch, U. S. Atty., and Morton Hollander, Attorney, Department of Justice, were on the brief, for appellee. Mr. Melvin Richter, Attorney, Department of Justice at the time the record was filed, also entered an appearance for appellee.

Before BAZELON, DANAHER and BASTIAN, Circuit Judges.

DANAHER, Circuit Judge.

Wellman invoked the District Court's jurisdiction pursuant to 28 U.S.C. § 2201 which authorizes the court in appropriate situations to "declare the rights and other legal relations of any interested party seeking such declaration." He also asked that the Administrator be required to resume payment of his service-connected disability compensation which had been declared forfeited. After consideration of Wellman's motion for summary judgment and the Administrator's motion to dismiss the complaint or in the alternative for summary judgment, the District Court dismissed the complaint on the ground that the court lacked jurisdiction over the subject matter. Wellman then appealed.

During World War II, Wellman was severely wounded while in combat, and having been discharged because of his disability, he received a 50 per cent disability rating. Compensation was paid to him from June 7, 1945, until May 31, 1954. On June 2, 1954, the Administrator acting through his proper subordinates notified Wellman that termination of his compensation was contemplated on the ground that he had been convicted on February 16, 1954, of the crime of conspiracy to advocate the overthrow of the Government by force and violence,[1] and an order of forfeiture was entered by the Administrator.

The Board of Veterans' Appeals on May 25, 1955, affirmed, holding that Wellman's conduct in furtherance of the conspiracy constituted rendering assistance to an enemy of the United States within the meaning of § 4 of the Act of July 13, 1943.[2]. This action having been commenced, the Board offered a new hearing on the question of forfeiture, and on December 31, 1956, reaffirmed its earlier decision.[3] It was decided, on the basis of Wellman's conviction and on the evidence "in its entirety," that Wellman's participation in Communist Party activity in Michigan after 1946 and particularly during the period of the Korean conflict "from June 27, 1950 through July 27, 1953" rendered assistance to the enemy, "the enemy being identified as the North Korean Government and the Communist Government of China."

There is no suggestion in the Board's opinion that Wellman performed any overt act in behalf of the Communist Government of China or that of North

1. This conviction under the Smith Act, 18 U.S.C. § 2385, involved a conspiracy alleged to have had existence from about April 1, 1945 to September 22, 1952.

2. 57 Stat. 554–55, 38 U.S.C.A. § 728 which reads in pertinent part:

"*Any person* shown by evidence satisfactory to the Administrator of Veterans' Affairs to be guilty of mutiny, treason, sabotage, or *rendering assistance to an enemy of the United States* or of its allies *shall forfeit all accrued or future benefits under laws administered by the Veterans' Administration pertaining to gratuities for veterans and their dependents: Provided, however,* That the Administrator of Veterans' Affairs, in his discretion, may apportion and pay any part of such benefits to the dependents of such person not exceeding the amount to which each dependent would be entitled if such person were dead." (Emphasis supplied.)

3. Meanwhile the suit remained in abeyance, but after the Board's decision reaffirming, the Administrator filed his answer and the motion referred to.

Korea. The Board points to no act of Congress which declares that conspiratorial efforts by a Party member shall predicate a forfeiture of a veteran's benefits, previously lawfully awarded.[4] Rather the Board at some length recited evidence of Wellman's "dedication to the Communist movement." Then, taking "judicial notice" of world events and the manner in other countries by which as part of an international movement the Communist Party came into power, the Board relied upon and quoted at length from the concurring opinion by Mr. Justice Jackson in Dennis v. United States.[5] It concluded as a matter of interpretation that "assistance to an enemy" as used in the forfeiture statute must be "considered to be a general term which was intended to include all conduct knowingly performed during time of war under circumstances where the potential effect of such conduct, individually or as integral part of other activity, contemporaneous or future, would be to serve the interests of the enemy."

We are pointed to no evidence that Wellman's activity in Michigan engendered a strike in war production plants or any similar interference said to have an effect obstructive to the war effort in Korea or elsewhere. We find no claim that Wellman's Communist Party protagonism was exercised among troops to the destruction of their morale or to an interference with the enlistment program. That the Board might conclude Wellman was a dedicated Communist, before, during and after the Korean conflict we have no doubt in view of the court's opinion affirming, when his case

was first on appeal.[6] Yet it is not suggested that all veterans of earlier wars who might similarly have been Party members thereby are subject to the forfeiture of their disability compensation for "rendering assistance to an enemy of the United States." While the Board says it took into account the evidence "in its entirety," we are left with the abiding conclusion that the Board's action basically rested upon Wellman's Smith Act conspiracy conviction.

That conviction had been affirmed, and so the record stood when the Administrator's motion to dismiss was granted by the District Court on June 4, 1957. But the situation has since changed. On June 17, 1957, the Supreme Court decided Yates v. United States.[7] The following week, certiorari was granted in Wellman v. United States,[8] the judgment was vacated and the case was remanded for reconsideration in the light of Yates. Thereupon the Court of Appeals reversed Wellman's conviction and a new trial has been ordered.[9] We think the Board should have an opportunity to reconsider the forfeiture issue in view of the developments. Accordingly, we remand to the District Court that the case may there be held in abeyance pending the Board's further consideration.[10]

In passing, it may be noted that Congress has never said that membership in the Communist Party, even though active and meaningful, will ground a forfeiture of a veteran's benefit rights.[11] It certainly did not say so in 1943, when as now the Soviet Union was under Communist domination. The provisions of 38 U.S.C.A. § 728 actually were in aid of

4. But compare 38 U.S.C.A. §§ 555 and 715.

5. 1951, 341 U.S. 494, 561, 566, 71 S.Ct. 857, 95 L.Ed. 1137.

6. Wellman v. United States, 6 Cir., 1955, 227 F.2d 757, 763 et seq.

7. 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356.

8. 354 U.S. 931, 77 S.Ct. 1403, 1 L.Ed.2d 1535.

9. Wellman v. United States, 6 Cir., 1958, 253 F.2d 601.

10. In an earlier posture, the Board agreed to this very course which we deem reasonable and appropriate in the circumstances. Supra note 3.

11. No such provision may be found in the Internal Security Act of 1950, 64 Stat. 987, or the Communist Control Act of 1954, 68 Stat. 775, although Congress is fully aware of the subversive, conspiratorial character of the Communist movement. See, e. g., 50 U.S. C.A. § 781 and 50 U.S.C.A. § 841.

the Soviet Union, as well as of our other allies, for a person might have been guilty of rendering assistance to *an enemy of the Soviet Union,* then our ally, and by his conduct have predicated a forfeiture under 38 U.S.C.A. § 728. The section was not limited to those who rendered assistance to an enemy of the United States. Moreover, that Congress was referring to a *wartime* "enemy of the United States," one engaged in active war against us, finds corroboration by reference to 38 U.S.C.A. § 729, where the identical language occurs. There provision was made for the termination *by statute* [12] of benefits payable to alien veterans who persisted in their stay in *enemy territory* during the war, subject, however, to later reinstatement upon the filing of a de novo claim by the veteran.

▰▰ While 38 U.S.C.A. § 728 authorizes a determination by the Administrator upon "evidence satisfactory to" him, his ruling, as we shall develop, is not simply discretionary with him. If it depends upon an erroneous interpretation of the law, it may be subject to review by the courts. We therefore will further examine this aspect of the case. Congress here sought to equate generally, "mutiny, treason, sabotage, or ren-

dering assistance to an enemy of the United States or of its allies" as offenses tending to weaken our nation's position in the total war then being waged. Article III, § 3 of the Constitution defined "Treason against the United States" to "consist only in levying War against them, or in adhering to their Enemies, giving them Aid and Comfort."[13] In short, no person, within the meaning of 38 U.S.C.A. § 728, guilty of the proscribed offenses was, as a matter of right, to continue eligible to receive benefits from the government of the nation whose welfare and security in time of war he sought to impair. But membership in the Communist Party, whether it advocated overthrow of our Government by force and violence or not,[14] was not within the purview of the section or the intent of Congress at the time.[15] Criminal penalties for a Smith Act violation had already therein been provided, but forfeiture of a veteran's compensation based upon service-connected disability was not included. The strict interpretation necessary as to so drastic a forfeiture statute as § 728 requires that it be limited in its application to the specific grounds spelled out by Congress, with clear proof of the overt acts

12. Of course Congress possesses power *itself* to withdraw compensation allowances. Lynch v. United States, 1934, 292 U.S. 571, 577, 54 S.Ct. 840, 78 L.Ed. 1434.

13. Of course, a *conviction* of treason requires the testimony of two witnesses to the same overt act or a confession in open court. U.S.Const. art. III, § 3. And see Cramer v. United States, 1945, 325 U.S. 1, 65 S.Ct. 918, 89 L.Ed. 1441. Mere sympathy with the enemy cause is not enough; there must be conduct giving aid and comfort to the enemy. Id., 325 U.S. at page 28, 65 S.Ct. at page 931; cf. Stephan v. United States, 6 Cir., 1943, 133 F.2d 87, 92, certiorari denied, 1943, 318 U.S. 781, 63 S.Ct. 858, 87 L. Ed. 1148.

14. Schneiderman v. United States, 1943, 320 U.S. 118, 148, 63 S.Ct. 1333, 87 L. Ed. 1796.

15. At the very least "overt acts" were essential, Id., 320 U.S. at page 159, 63 S.Ct.

at page 1353. The writer as a member of the Senate Committee on Finance served on the Subcommittee on Veterans' Legislation which on July 6, 1943, reported out H.R. 2703, S.Rep. No. 403, 78th Cong., 1st Sess. The Congress was alive to reports of possible sabotage, such as were associated with the landing of Nazi saboteurs in June 1942 from a Nazi submarine [see Cramer v. United States, 1945, 325 U.S. 1, 65 S.Ct. 918, 89 L.Ed. 1441]; the destruction of the Normandie in February 1942 [see Southern S. S. Co. v. National Labor Relations Board, 1942, 316 U.S. 31, 46, 62 S.Ct. 886, 86 L.Ed. 1246]; mutiny [see Id., 316 U.S. at page 43, 62 S.Ct. at page 892]; propaganda broadcasts by renegade personages, and similar conduct designed to give aid and comfort [Cramer v. United States, 325 U.S. at page 30, 65 S.Ct. at page 933] and thus render assistance to the enemy. Therein lay the genesis of 38 U.S.C.A. § 728, as prepared by the Veterans' Administration, to reflect the will of Congress.

relied upon.[16] Thus, if the Administrator has exceeded his authority in the determination he makes, his ruling becomes arbitrary or capricious in the legal sense. He may not deny a right which the statute creates, except for validly and legally sufficient grounds.[17] That his ruling here transcended his authority seems clear.

■ The Administrator would have us say, notwithstanding, that judicial relief is not available even if he has acted in excess of his expressed or implied powers. Not so.[18] He argues that judicial review is foreclosed to this appellant. He points to § 5 of the Act of March 20, 1933[19] which, as it now appears in the Code, reads:

"All decisions rendered by the Administrator of Veterans' Affairs under the provisions of sections 701, 702, 703, 704, 705, 706, 707–710, 712–715, 717, 718, 720, and 721 of this title or the regulations issued pursuant thereto, shall be final and conclusive on all questions of law and fact, and no other official or court of the United States shall have jurisdiction to review by mandamus or otherwise any such decision."

But the foregoing section was expressly made applicable by Congress[20] to the decisions of the Administrator under the provisions of the specified sections. It will be noted that 38 U.S.C.A. § 728 was *not* so included. Surely this was no oversight, for the latter section was enacted as § 4 of the very act which defined the applicability of § 1. That the omission was deliberate may be the more readily perceived from the fact that Congress accorded finality to the Administrator's decisions for such forfeitures as are commanded by 38 U.S.C.A. § 715. Thus the specific *inclusion* of the non-reviewability section as to decisions for forfeiture based upon fraud and the *exclusion* of decisions for forfeiture under § 728 manifestly reflect a clear congressional intent. In short, forfeitures based upon vitiating fraud concerning any *claim* for benefits might administratively be finally determined, and we have so held.[21]

■ The Administrator next argues that if 38 U.S.C.A. § 705 does not here apply, he may stand upon 38 U.S.C.A. § 11a–2[22] which reads:

"Notwithstanding any other provisions of law, except as provided in sections 445 and 817 of this title, the decisions of the Administrator of Veterans' Affairs on any question of law or fact concerning a *claim* for benefits or payments under any Act administered by the Veterans' Administration shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decisions." (Emphasis supplied.)

Here, it will be noted, Congress accorded finality to decisions concerning *claims*,[23]

16. Mere sympathy with the enemy cause is not enough. Cramer v. United States, supra note 13, 325 U.S. at 28, 65 S.Ct. at page 932.

17. Dismuke v. United States, 1936, 297 U.S. 167, 172, 56 S.Ct. 400, 80 L.Ed. 561.

18. Harmon v. Brucker, 1958, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503.

19. 48 Stat. 9, 38 U.S.C.A. § 705. Compare § 211 of "Veterans' Benefits Act of 1957," 71 Stat. 83, 38 U.S.C.A. § 2211, not here applicable.

20. See § 1, 57 Stat. 554, which now appears as 38 U.S.C.A. § 727 explicitly

enumerating the identical sections referred to in 38 U.S.C.A. § 705.

21. See Van Horne v. Hines, infra note 25.

22. § 11, 54 Stat. 1197.

23. "A properly completed and executed VA Form 8–526 * * * constitutes an application for benefits * * *." 38 C.F.R. § 3.26 (1956). This application "constitutes a formal claim." Ibid. "Claims for benefits under sections [enumerated as in 38 U.S.C. §§ 705 and 727] shall be filed with the Veterans' Administration under such regulations, including provisions for hearing, determination, and administrative review, as the President may approve. * * *" 38 U.S.C.A. § 709.

a term which is thoroughly understood and carefully defined. We have repeatedly recognized that non-reviewability must be accorded to the Administrator's decisions as to claims.[24] But we are not here concerned with a "claim" by a veteran, but with action *by the Administrator* working the forfeiture of an already adjudicated award.

We cannot doubt that ample and substantial grounds dictated the congressional intention that a veteran's service-connected disability compensation was not to be forfeited by virtue of an unreviewable decision in the agency that a veteran was guilty of so serious an offense as treason or rendering assistance to the enemy in time of war. Moreover, we are entirely satisfied that Congress recognized that there is a very real distinction between a decision as to a *claim*[25] initiated by a veteran and a decision by the Administrator as to action commenced *by him* under 38 U.S.C.A. § 728.[26] Clearly, it is not every action by the Administrator which has been accorded by Congress the status of non-reviewability.[27]

We have said enough to indicate our appraisal of Wellman's status and the rights he has sought to vindicate.[28] We think the Administrator should have an opportunity to reconsider his action, and for now we need go no farther than to remand the case to the District Court. We expect that it there may again be held in abeyance pending the Administrator's reconsideration in the light of our observations. We are confident that such reconsideration will seem to be quite in order since Wellman's Smith Act conviction has been reversed, and since the record is barren of fact or incident to indicate that Wellman in Michigan performed any overt act which rendered assistance to the Communist governments of China and of North Korea.

Vacated and remanded accordingly.

BASTIAN, Circuit Judge, concurs in the result.

BAZELON, Circuit Judge (concurring in part and dissenting in part).

I agree with Judge Danaher that this forfeiture is judicially reviewable. I share his "abiding conclusion" that the action was based upon the Smith Act conviction and join in the holding that the Administrator's "ruling here transcended his authority." It follows from this that the forfeiture is null and void and should be so declared. Therefore I dissent from so much of Judge Danaher's opinion as retains the forfeiture in full force and effect pending a determination by the Administrator as to whether or not there may exist proper evidence, not thus far relied upon, to justify a for-

24. See, e. g., Longenecker v. Higley, 1955, 97 U.S.App.D.C. 144, 229 F.2d 27, and see Jaffe, The Right to Judicial Review II, 71 Harv.L.Rev. 769, 770 (1958).

25. See, e. g., Van Horne v. Hines, 1941, 74 App.D.C. 214, 216, 122 F.2d 207, 209, certiorari denied, 1941, 314 U.S. 689, 62 S.Ct. 360, 86 L.Ed. 552, where we recognized that Congress might withdraw jurisdiction from the courts over a decision of the Administrator which worked a forfeiture because of the fraud *of the claimant.* And see 38 U.S.C.A. § 705, supra note 19.

26. Of course a congressional termination of payments is in an entirely different category; cf. 38 U.S.C.A. § 729; and so as to terminations of and reductions in payments pursuant to regulations issued pursuant to statute. Hahn v. Gray, 1953, 92 U.S.App.D.C. 188, 203 F.2d 625, is not to the contrary. There we considered a claim by one who "was no longer the unremarried widow of a veteran and was properly denied restoration to the pension rolls." Id., 92 U.S.App.D.C. at page 190, 203 F.2d at page 626. The 1933 Act, supra note 19, applied specifically to the section under which benefits were sought, and the 1940 Act, supra note 22, applied to the very "claim" for which the action was initiated by the claimant.

27. Cf. Hormel v. United States, D.C.S.D. N.Y.1954, 123 F.Supp. 806, 809-810.

28. Cf. Frank v. Rogers, 1958, 102 U.S. App.D.C. 367, 253 F.2d 889; we do not reach Wellman's prayer for resumption of payments and for other relief.

feiture. If such evidence should be found at some future time, appellant's compensation payments may then be ordered forfeited. But unless and until that happens, he is entitled to prompt payment of all moneys due him.