**Robert G. THOMPSON, Appellant,**

v.

**John S. GLEASON, Jr., Administrator of Veterans Affairs, Appellee.**

**No. 16014.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 2, 1961.

Decided July 12, 1962.

Bazelon, Circuit Judge, dissented in part.

Mrs. Mary M. Kaufman, New York City, of the bar of the Court of Appeals of New York, *pro hac vice,* by special leave of court, with whom Mr. Joseph Forer, Washington, D. C., was on the brief, for appellant.

Mr. Robert L. Keuch, Atty., Dept. of Justice, with whom Messrs. Kevin T. Maroney and George B. Searls, Attys., Dept. of Justice, were on the brief, for appellee.

Before Mr. Justice BURTON, retired,\* PRETTYMAN, Senior Circuit Judge, and BAZELON, Circuit Judge.

\* Sitting by designation pursuant to Sec. 294(a), Title 28, U.S.Code.

PRETTYMAN, Senior Circuit Judge.

This is an appeal from a judgment [1] rendered by the District Court in a suit for declaratory judgment and injunctive relief brought by our appellant Thompson against one Whittier, then Administrator of Veterans Affairs.[2]

Perhaps we had best analyze the case into its constituent elements:

The person involved (Thompson) is an honorably discharged veteran of World War II. He served some two years in the armed forces, with such distinction as to receive the Distinguished Service Cross for heroism under fire in combat and to be recommended for a battlefield commission as a Captain.

The subject matter involved consists of benefits awarded him for disability (pulmonary tuberculosis) incurred in the service.

The action complained of was the discontinuance of those benefits.

The official taking this action was the Administrator of Veterans Affairs, acting pursuant to decisions of the Central Committee on Waivers and Forfeitures and the Board of Veterans Appeals, both subordinate tribunals in the Veterans Administration.

The authority claimed for the action taken was Public Law 144, 78th Congress, 1st Session, Section 4 of which [3] provided in pertinent part:

"Any person shown by evidence satisfactory to the Administrator of Veterans' Affairs to be guilty of mutiny, treason, sabotage, or rendering assistance to an enemy of the United States or of its allies shall forfeit all accrued or future benefits under laws administered by the Veterans' Administration pertaining to gratuities for veterans and their dependents: * * *."

The ground for the action was that Thompson had rendered assistance to an enemy of the United States, within the meaning of the quoted statute.

The facts upon which the foregoing conclusion was reached were in two parts, one part stipulated and the other part derived from the testimony of witnesses and from records. Summarized, the facts as found by the Board were: Thompson had been a member of the Communist Party since 1933; attended courses in Marxism and Leninism in Moscow in 1935 and 1936; held various state and national offices in the Communist Party in the United States; wrote a column for The Daily Worker; was tried and convicted in October, 1949, under the Smith Act, and the Supreme Court affirmed in June, 1951;[4] refused to appear for sentencing and became for a while a fugitive; and was apprehended in August, 1953, and charged and convicted of contempt of court and sentenced. The Board also found that, while on bail, and beginning with the commencement of the Korean conflict in June, 1950, Thompson made speeches and wrote articles in which he made such statements as "Mass action NOW can still halt a Police State" and "American imperialism is hiding behind the skirts of the Negro G.I. in Korea"; demanded "withdrawal of the United States Troops from Korea"; urged "defeat of the McCarran Bill"; advocated "if the bill passed, it should be rendered ineffective by not registering under its provisions"; criticized "the gigantic armament program and its cost"; asserted

---

1. We omit the procedural details through which the case has passed. A three-judge court was requested and convened. It heard the case, and its opinion was reported at 185 F.Supp. 306 (1960). Appeal was taken to the Supreme Court, which dismissed on the ground that the three-judge court had been improvidently convened. 365 U.S. 465, 81 S.Ct. 712, 5 L.Ed.2d 704 (1961). Meantime this appeal had been noted in this court, and appellant pursued it.

2. Our present appellee is John S. Gleason, Jr., successor in office to Whittier.

3. 57 Stat. 555 (1943) (now 38 U.S.C. § 3504(a)).

4. Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951).

"that it had cost more dearly in attacks on the Bill of Rights and democratic liberties, in growing terror and lynchings against the negro people, in vicious upsurge of anti-semitism and shameful attacks on the foreign born" and "that the 'Truman get tough with Russia policy' means in the last analysis get tough with the American people"; declared "that the way of life of the working people of the State daily becomes more cruelly affected and more viciously warped with each war move of the Wall Street bankers and the Washington politicians"; referred to the "war mobilization and militarization of the home front", the "savage Truman-MacArthur war of aggression in Korea", and the "avowed intention of the ruling class of our country to launch an atomic world war"; declared the "strength of the peace movement is basically determined by the extent to which the working class is in motion on various fronts against the war policies of monopoly capital"; and called for "greater party unity in order to achieve in our Party organization in New York State an ability to effectively execute the kind of concentration policy called for by the National Draft Resolution." That Resolution, the Board found, condemned our war efforts and our diplomatic achievements by vicious harangues, *e. g.*, "the United States support of the United Nations in the Korean Conflict constituted *'armed intervention,' 'armed aggression'* and *'fiendish Lidicies perpetrated by American hands'* "; said that the United States "seeks to destroy the national independence of its allies", "threatens aggression against Communist China", "seeks to subjugate the Chinese and all Asian peoples", and has a "mad dream to conquer and subjugate the entire world"; and, in contrast, declared that the Soviet Union "heads the camp of peace and democracy, blocking the drive of Wall Street imperialism toward complete world mastery."

The position of the Administrator was that Thompson's speeches and articles after June, 1950, were a continuation of his activities prior to his conviction in October, 1949, and took character from those activities; that these speeches and articles constituted "rendering assistance to an enemy of the United States".

The reasoning of the Administrator is indicated by the following extracts from the opinion and decision of the Board of Veterans Appeals:

"In other words 'rendering assistance to an enemy of the United States' may consist of acts which are intentionally committed by a person with the understanding that such acts will result in a weakening of our effort against the enemy but which are not necessarily accompanied by the specific intent to transfer allegiance from the United States to the enemy.

\* \* \* \* \* \*

"The enemy assistance of which the veteran is charged involves acts subsequent to June 27, 1950. We are not concerned with the question of whether, by means of such acts, the veteran intended to betray his country and was guilty of treason or of whether he entered into a conspiracy of any sort in connection therewith; the question is whether the acts were done intentionally rather than through negligence or without realization as to the consequences of his acts and whether the natural tendency and probable effect thereof would reasonably be expected to benefit the enemy. It is not necessary to establish that the enemy actually derived any particular benefit from the acts committed if, viewed in the light of the attending circumstances, including an evaluation of the facts bearing upon the question of whether the person was in a position to particularly influence others, it is reasonable to conclude that the acts would naturally tend to be of assistance to the enemy.

\* \* \* \* \* \*

" \* \* \* the Board concludes that the evidence establishes beyond a reasonable doubt that during the Korean Conflict he made public ut-

terances which were calculated by him to incite others to action beneficial to the North Korean Government and the Communist Government of China; that he therefore rendered assistance to an enemy of the United States within the purview of Section 4 of Public Law 144; * * *."

The principal questions which we must decide are: (1) Did the phrase "rendering assistance to an enemy of the United States" in Public Law 144 (frequently called "the forfeiture statute") include such activities as the speeches made and articles written by Thompson during the time of the Korean conflict? (2) If the answer to (1) is "yes", is the statute valid?

The Department of Justice represents the Administrator upon this appeal. In its brief it suggests three possible constructions of the disputed statutory phrase: (a) that the phrase was a reference solely to the offense "aids, or attempts to aid, the enemy", made punishable by Article 104 of the Punitive Articles of the Uniform Code of Military Justice;[5] (b) that Congress in effect left to the Administrator the power to determine what conduct amounted to "rendering assistance to an enemy"; (c) that the phrase includes all offenses defined as crimes by a statute, which can be committed in time of war and which render assistance to the enemy, and so includes the offense defined in 18 U.S.C. § 2388.

Appellant urges construction (a). The Administrator adopted construction (b). The Department of Justice supports construction (c).

█ The view of appellant (construction (a)), that the disputed phrase includes only offenses described in Article 104 of the Uniform Code, seems to us to be too narrow. That Article provides, in pertinent part:

"Any person who—

"(1) aids, or attempts to aid, the enemy with arms, ammunition, supplies, money, or other thing; or

"(2) without proper authority, knowingly harbors or protects or gives intelligence to, or communicates or corresponds with or holds any intercourse with the enemy, either directly or indirectly; * * *."

Appellant says that this definition of "aiding the enemy" is patently the one contemplated by Congress in the phrase "rendering assistance to an enemy". This obviously cannot be so, since in 1943, when the latter phrase appeared in the statute, the language now in Article 104 was not in the statute, first appearing there in 1950. The Article (81) which was in the law in 1943 spoke of "Whosoever relieves or attempts to relieve the enemy".

Besides that point, appellant's argument in effect is that Congress picked one Article of War out of many and, without so saying, meant for that one Article to represent the full scope of rendering assistance to an enemy. We are shown, and we can find, no affirmative indication of such an intention on the part of Congress. Whether we view the argument as directed to Article 104, as appellant expresses his argument, or to the predecessor Article 81 which was in the statute in 1943 when the forfeiture statute was enacted, makes no difference. Both Articles carefully specify the sort of assistance they declare to be a crime— aiding with things and harboring, giving intelligence to, or corresponding with an enemy. But obviously there are other means of rendering assistance to an enemy. Such are conveying false reports, causing refusal of duty, obstructing enlistment, and other similar activity; the present Section 3505(b), of Title 38, United States Code, contains a long list of "subversive activities". Appellant's argument is not persuasive to us on this point. And, in our judgment, this construction is a strained view from the standpoint of common sense.

█ It seems to us that the construction of the statute adopted by the Administrator (construction (b)) poses serious

5. Act of May 5, 1950, 64 Stat. 107–108, 133, 138 (now 10 U.S.C. § 904).

constitutional questions. Thompson is charged with making speeches and writing newspaper articles, but not with any other acts. If the Administrator has power to determine that speeches and writings which are nowhere proscribed as criminal acts nevertheless "render assistance" to an enemy, he has a virtually unlimited power in the matter. He could cancel existing benefits because of a non-criminal speech. Here we are close to, if not within, the boundary line of First Amendment protections.[6] That the denial of a privilege for engaging in a speech may impinge upon First Amendment rights was explicitly pointed out by the Supreme Court in Speiser v. Randall.[7] Affirmatively the Court assumed, without deciding, that a state "may deny tax exemptions to persons who engage in the proscribed speech for which they might be fined or imprisoned." The Court referred to its own decision in Hannegan v. Esquire, Inc.[8] Under the well-established rule we must avoid such constitutional questions if it be practical and reasonable to do so.

Appellant also argues that the forfeiture statute is invalid because it is so vague as to violate the due process clause. The statute contains no definitions of the term "rendering assistance to an enemy", and the legislative history supplies none. Neither provides standards by which to measure the meaning of the phrase. The doctrine that vagueness may invalidate a statute is well established in respect to criminal cases. The only cases cited to us by appellant are criminal cases. But the case at bar is not a criminal case. It concerns the forfeiture of benefits, which fall within the legal principles respecting gratuities.[9] So the problem here is whether the statute authorizing administrative forfeitures of benefits must, as a matter of due process, contain standards of reasonable certainty. We are referred to no authority on this point, and, in view of other features of the case, we do not now attempt to research or decide it. It appeals to us as a properly debatable question, because the benefit was a monetary one (i. e., not an intangible), it had been actually and validly granted (was, in other words, actually in existence), and it was pursuant to a Congressional intent of high purpose and design. Of course the Congress itself could cancel it—could repeal the whole statute, in fact. But whether Congress could validly give an executive official blanket power to cancel his own act, without laying down reasonable standards to guide him in the exercise of that power, is another and different question. We do not decide it; we merely note it.

■ The view of the Department of Justice is that "rendering assistance to an enemy" for the purposes of the forfeiture statute means any act defined by Congress as a crime and which does indeed render assistance to an enemy. Section 2388, of Title 18, United States Code, provides in pertinent part:

"(a) Whoever, when the United States is at war, willfully makes or conveys false reports or false statements with intent to interfere with the operation or success of the military or naval forces of the United States or to promote the success of its enemies; or

"Whoever, when the United States is at war, willfully causes or attempts to cause insubordination, disloyalty, mutiny, or refusal of duty, in the military or naval forces of the United States, or willfully obstructs the recruiting or enlistment service

6. See dissenting opinion of Judge Fahy in this matter when it was before the three-judge court. Thompson v. Whittier, D.C., 185 F.Supp. 306, 314.

7. 357 U.S. 513, 518–520, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958).

8. 327 U.S. 146, 156, 66 S.Ct. 456, 90 L.Ed. 586 (1946).

9. See, e. g., Lynch v. United States, 292 U.S. 571, 577, 54 S.Ct. 840, 78 L.Ed. 1434 (1934); Magnus v. United States, 234 F.2d 673 (7th Cir. 1956), cert. denied, 352 U.S. 1006, 77 S.Ct. 569, 1 L.Ed.2d 551 (1957); Hahn v. Gray, 92 U.S.App. D.C. 188, 203 F.2d 625 (D.C.Cir. 1953).

of the United States, to the injury of the service or the United States, or attempts to do so— * * *."

The Department urges that the acts thus defined as crimes fall within the general phrase "rendering assistance to an enemy". Such acts are definite, not vague, and are criminal. This construction avoids serious questions of constitutional validity. This is a desirable feature. It incorporates into the general expression no undefined specifics; each included item is somewhere defined with the precision necessary to a criminal statute. This also is a desirable feature. Moreover, although we find no direct statement by Congress, its committees, or its members that this phrase was intended to include only defined criminal acts, the whole purport of the discussions prior and subsequent to the life of this statute was to that effect.[10] Over and over again, in discussions of the forfeiture of benefits, reference was made to "offenses" or "guilty". An unspoken premise would appear to have been that "rendering assistance to an enemy" meant some act which was deemed to be a crime. We think this construction should be adopted and applied.

■ We think that the determination whether Thompson's speeches and writings fell within any statutory proscription of an act as criminal, and whether they did in fact render assistance to an enemy within the meaning of the forfeiture statute, should first be made by the Administrator. For that purpose we remand the case to give him that opportunity, as we did in Wellman v. Whittier.[11]

■■ Two more points must be mentioned. Appellee says the court has no jurisdiction, because the Tucker Act [12] and the veterans laws [13] deny jurisdiction to review action on claims for benefits. We treated the argument, and rejected it, in Wellman. We there held that a forfeiture of benefits is not, and does not create, a claim to benefits or a claim to pensions within the meaning of those statutes. The other point is one made by appellant, who says the forfeiture statute is invalid as a bill of attainder, being penal, imposing punishment. We think the argument is answered in the negative by Flemming v. Nestor [14] and the cases there cited.

The judgment will be reversed and the case remanded to the District Court, with instructions to remand to the Administrator for further proceedings in accordance with this opinion.

So ordered.

BAZELON, Circuit Judge (concurring in part and dissenting in part).

I agree that the administrator's determination rests upon an erroneous construction of the statute. But I dissent from the action of the court remanding the case to afford him an opportunity to make another determination. The administrator may institute new proceedings, if so advised. But unless and until he lawfully terminates appellant's benefits in such new proceedings, appellant is entitled to those benefits. See my dissent in Wellman v. Whittier, 104 U.S.App.D.C. 6, 12, 259 F.2d 163, 169 (1958).

---

10. 89 Cong.Rec. 7389 (1943) (remarks of Congressman Rankin); H.R.Rep. No. 463, 78th Cong., 1st Sess. (1943); S.Rep. No. 664, 86th Cong., 1st Sess. (1959); 73 Stat. 452 (1959), 38 U.S.C. §. 3503 (d); 73 Stat. 453 (1959), 38 U.S.C. § 3505(a), (b).

11. 104 U.S.App.D.C. 6, 259 F.2d 163 (1958).

12. 24 Stat. 505 (1887), as amended, 28 U.S.C. § 1346(d).

13. 72 Stat. 1115 (1958), 38 U.S.C. § 211 (a).

14. 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).