379 F.2d 469
 Margaret C. TRACY and Mary R. Tracy, Co-Administratrices of Estate of George Tracy, Appellants,
v.
John S. GLEASON, Jr., Individually and as Administrator of Veterans Affairs, Appellee.
 No. 20117.
 United States Court of Appeals District of Columbia Circuit.
 Argued January 4, 1967.
 Decided May 25, 1967.
 
 Mr. James V. Dolan, Washington, D. C., with whom Mr. John E. Nolan, Jr., Washington, D. C., was on the brief, for appellants.
 Mr. Alan S. Rosenthal, Atty., Department of Justice, with whom Asst. Atty. Gen. John W. Douglas, Messrs. David G. Bress, U. S. Atty., and J. F. Bishop, Atty., Department of Justice, were on the brief, for appellee. Mr. Frank Q. Nebeker, and Miss Carol Garfiel, Asst. U. S. Attys., also entered appearances for appellee.
 Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and BURGER, Circuit Judge.
 WILBUR K. MILLER, Senior Circuit Judge:
 
 
 1
 The appellants, co-administratrices of the estate of George Tracy, sought a declaratory judgment that the appellee or his predecessor had wrongfuly terminated their decedent's pension. They also asked the District Court to require appellee to pay to them the sums due for the period of discontinuance. The appellee moved to dismiss on the ground that "the Court lacks jurisdiction to review a decision of the Veterans Administration regarding gratuitous benefits." From the District Court's action in granting this motion, the administratrices appeal.
 
 
 2
 The allegations of the complaint will be summarized as briefly as possible. George Tracy, an honorably discharged veteran of World War I, was on July 31, 1936, adjudged by the District Court
 
 
 3
 "* * * to be of unsound mind, suffering from dementia praecox catatonic type with homicidal or otherwise dangerous tendencies and particularly that he has not sufficient capacity for the government of himself and his property, that he has been so insane since June 30, 1936. * * *"
 
 
 4
 On the same day Tracy was admitted to St. Elizabeths Hospital where he continuously remained as a patient until his death on September 2, 1961.
 
 
 5
 The Veterans Administrator determined that Tracy was entitled to a pension of $60 per month beginning September 10, 1948, and continuing so long as he was totally and permanently disabled, subject to certain conditions. But, on March 7, 1949, the Administrator wrote to George Tracy at St. Elizabeths Hospital:
 
 
 6
 "Since you failed to cooperate with this office by not [sic] executing and returning Form 8-59 indicating the amount of your income for 1948, action has been taken to discontinue your pension payments."
 
 
 7
 (On January 12, 1949, a contact representative of the Veterans Administration at St. Elizabeths Hospital advised Margaret C. Tracy, a sister of George Tracy and now one of the administratices, that, apart from pocket money of $8 per month, the pension checks "are deposited to your brother's credit in the hospital finance office and will be turned over to him in full at the time of his discharge." It was not until November 2, 1960, that the Veterans Administration advised Margaret C. Tracy or her sister, Mary R. Tracy, that Tracy's pension had been discontinued.)
 
 
 8
 On January 12, 1961, Margaret C. Tracy was advised by the Veterans Administration that George Tracy was "entitled to pension on account of being permanently or totally disabled from November 7, 1960."[1] And on June 14, 1961, she was advised by the Veterans Administration that the amount of the pension was $85 monthly from November 2, 1960, of which $75 "is being placed in a special fund since it has been determined that he is presently not capable of managing his affairs." These payments were made from November 2, 1960, until September 2, 1961, when Tracy died.
 
 
 9
 Thus, Tracy's total and permanent disability was formally recognized by the Veterans Administration in 1948 and in 1961. As a matter of fact, his disability, which began no later than July 31, 1936, when he was adjudged insane and committed to St. Elizabeths, continued without interruption until his death in that hospital.
 
 
 10
 On October 18, 1962, Margaret C. Tracy and Mary R. Tracy, next of kin of George Tracy, appealed to the Board of Veterans Appeals from the Administrator's action in discontinuing in 1949 the pension benefits which had been awarded in 1948. They alleged the forfeiture of the pension was unlawful because it was based on George Tracy's failure to answer and return an income questionnaire, although he was not mentally competent to prepare and file such a document. (As we have said, the questionnaire was mailed to Tracy at St. Elizabeths Hospital.)
 
 
 11
 After this appeal had been pending nearly five months, the Board of Veterans Appeal denied it. The Board found, inter alia, as follows:
 
 
 12
 "1. Pension benefits were granted the veteran effective September 10, 1948, date of receipt of application, at which time it was reported that he had been hospitalized at St. Elizabeth's Hospital since 1936 for a mental condition. * * *"
 
 
 13
 "3. The originating agency terminated the veteran's pension benefits as of date of last payment in February 1949 for failure to respond to a request to submit income information in connection with his claim. * * *"
 
 
 14
 The Board's decision of March 7, 1963, said that at the time of forfeiture in 1949 for failing to answer the questionnaire, the Veterans Administrator did not know
 
 
 15
 "* * * the veteran was, in fact, incompetent or by reason of evidence in the file at such time should have known [sic] that he was incompetent."
 
 
 16
 The Board's decision refers, however, to certain documents which were in the Veterans Administration files at the time of forfeiture in 1949, from which the Administrator should have known Tracy was incompetent when the questionnaire was sent to him at a mental hospital. One of these is the application for disability pension benefits filed September 10, 1948. It shows on its face it was not filed by George Tracy himself, but by the Acting Superintendent of a mental hospital "for George Tracy." Attached to the application was a medical report of September 7, 1948, which read in part:
 
 
 17
 "George Tracy * * * was admitted to Saint Elizabeths Hospital July 31, 1936 by transfer from Gallinger Municipal Hospital where he was described as confused, depressed and hallucinated.
 
 
 18
 "* * * During the initial interview [at the time of admission to Saint Elizabeths] he was noted to be hallucinated and believed that he heard God's voice. He also spoke of visual hallucinations.
 
 
 19
 "During the course of his hospitalization this patient * * * continues to suffer bouts of confusion and depression. * * *
 
 
 20
 "Diagnosis: dementia precox (schizophrenia) catatonic type. * * *"
 
 
 21
 Furthermore, the Veterans Administration files already contained the income information for about three-fourths of the year to which the questionnaire pertained; for the pension application contains the following questions and answers:
 
 
 22
 "Question 8(c) `Names and addresses of former employers for last 12 months.'
 
 
 23
 "Answer `Hospitalized since June 30, 1936.'"
 
 
 24
 "Question 8(e) `Give total income for last 12 months received from:
 
 
 25
 "`Employers' Answer `None'
 
 
 26
 "`Self-employment' Answer `None'
 
 
 27
 "`From all sources other than work' Answer `None'
 
 
 28
 "`Value of your estate from all sources' Answer `None'"
 
 
 29
 "Question 9(c) `If you had employment could you work full time?'
 
 
 30
 "Answer `No'
 
 
 31
 "Question `If not, why?'
 
 
 32
 "Answer `Hospitalized'
 
 
 33
 "Question `Part-time?'
 
 
 34
 "Answer `Hospitalized' "Question `If not, why?'
 
 
 35
 "Answer `Hospitalized.'"
 
 
 36
 On February 28, 1964, the Tracy sisters requested reconsideration of the Board's decision of March 7, 1963, for "obvious error of fact or law," in that the Veterans Administrator knew in 1949 or should have known that Tracy was incompetent when the questionnaire was sent to him at St. Elizabeths. After more than two months, on May 7, 1964, the Board of Veterans Appeals affirmed its denial of the Tracy sisters' appeal.
 
 
 37
 In our opinion the complaint tells a story of arbitrary and capricious action on the part of the officials: (a) the Administrator acted arbitrarily in the circumstances when he terminated the pension of Tracy because that unfortunate, totally disabled by insanity, had failed to return an income questionnaire; (b) the Board of Veterans Appeals acted arbitrarily in affirming the termination after it had learned the facts; and (c) the Administrator acted arbitrarily in failing to make payments for the full period of discontinuance after he had been told what he should have known before: that George Tracy was insane and was totally and permanently disabled in 1949 and continuously thereafter.
 
 
 38
 The District Court granted appellee's motion to dismiss for lack of jurisdiction, relying on 38 U.S.C. § 211(a) (1958):
 
 
 39
 "(a) Except as provided in sections 784, 1661, 1761, and as to matters arising under chapter 37 of this title, the decisions of the Administrator on any question of law or fact concerning a claim for benefits or payments under any law administered by the Veterans' Administration shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision."
 
 
 40
 So, the question on this appeal is whether the Administrator's forfeiture in 1949 of the pension benefits awarded in 1948 was a decision "on any question of law or fact concerning a claim for benefits or payments" within the meaning of that statute. (Emphasis supplied.)
 
 
 41
 In Wellman v. Whittier, 104 U.S.App. D.C. 6, 259 F.2d 163 (1958), after quoting the then § 11a-2 of Title 38, which is essentially the same as 38 U.S.C. § 211 (a) here involved, Judge Danaher said, at pages 11-12, 259 F.2d at 168-169:
 
 
 42
 "* * * Here, it will be noted, Congress accorded finality to decisions concerning claims,[23] a term which is thoroughly understood and carefully defined. We have repeatedly recognized that non-reviewability must be accorded to the Administrator's decision as to claims. But we are not here concerned with a `claim' by a veteran, but with action by the Administrator working the forfeiture of an already adjudicated award.
 
 
 43
 "We cannot doubt that ample and substantial grounds dictated the congressional intention that a veteran's service-connected disability compensation was not to be forfeited by virtue of an unreviewable decision in the agency that a veteran was guilty of so serious an offense as treason or rendering assistance to the enemy in time of war. Moreover, we are entirely satisfied that Congress recognized that there is a very real distinction between a decision as to a claim initiated by a veteran and a decision by the Administrator as to action commenced by him under 38 U.S.C. § 728. Clearly, it is not every action by the Administrator which has been accorded the status of non-reviewability." (Emphasis in original. Some footnotes omitted.)
 
 
 44
 "[23].`A properly completed and executed VA Form 8-526 * * * constitutes an application for benefits * * *.' 38 C.F.R. § 3.26 (1956). This application `constitutes a formal claim' Ibid. `Claims for benefits under sections [enumerated as in 38 U.S.C. §§ 705 and 727] shall be filed with the Veterans' Administration under such regulations, including provisions for hearing, determination, and administrative review, as the President may approve. * * *' 38 U.S.C.A. § 709." In the case of Thompson v. Gleason, 115 U.S.App.D.C. 201, 317 F.2d 901 (1962), a division composed of Mr. Justice Burton and Judges Prettyman and Bazelon followed the foregoing holding of the Wellman opinion. Judge Prettyman said, at page 207, 317 F.2d at 907:
 
 
 45
 "* * * Appellee says the court has no jurisdiction, because the Tucker Act and the veterans laws [38 U.S.C. § 211(a)] deny jurisdiction to review action on claims for benefits. We treated the argument, and rejected it, in Wellman. We there held that a forfeiture of benefits is not, and does not create, a claim to benefits or a claim to pensions within the meaning of those statutes. * * *"
 
 
 46
 Thus, the latest utterance of this court, as recent as 1962, is that the Veterans Administrator's forfeiture of previously awarded pension benefits is not a decision on a claim, which is statutorily unreviewable, but is action initiated by the Administrator to which the finality statute does not apply.
 
 
 47
 It may be that the Administrator's failure to recognize this plain distinction arises from the fact that apparently it is his routine practice to continue to designate a veteran's benefits file as a "claim," after the claim has been allowed and benefits have been awarded. Thus he reasons that when he terminates a veteran's benefits, he is making a decision as to a "claim." This use of the word "claim" may be convenient office procedure, but it does not bring a termination of benefits within the meaning of the word "claim" in § 211(a).
 
 
 48
 We hold, for the reasons given in Note 23 to Judge Danaher's Wellman opinion, that the word "claim," as used in § 211(a), refers only to a particular form of claim prescribed to be used by a veteran in applying for benefits, and therefore does not include the Administrator's subsequent discontinuance of benefits theretofore awarded. If Congress had intended § 211(a) to apply to termination of previously awarded benefits, as well as to claims, it could easily have so provided. Our view is that in § 211(a) Congress used the word "claim" to mean "claim" and nothing else; that is, that it is to be restricted to an actual claim for benefits asserted by a veteran, and not to the Administrator's termination of benefits after a claim has been allowed and the benefits claimed have been awarded.
 
 
 49
 Although the award of benefits pursuant to a claim therefor does not give the veteran a vested property right in the benefits, we think it clear that after the claim has been allowed and benefits have been awarded, there is, strictly speaking, no longer a mere claim which the Administrator may unreviewably reject if he chooses. The veteran is then no longer a mere claimant: he is on quite a different footing — he is a beneficiary, and the Administrator's subsequent termination of his benefits should not be immune from judicial scrutiny. We do not believe Congress intended such action by the Administrator to be unreviewable; certainly, it did not so provide in § 211(a).
 
 
 50
 Regardless of what the rule may be elsewhere, we adopt for this Circuit the holding of the Wellman case as to the meaning of § 211(a). We reach this conclusion despite the fact that Van Horne v. Hines, 74 App.D.C. 214, 122 F.2d 207 (1941); Hahn v. Gray, 92 U.S.App. D.C. 188, 203 F.2d 625 (1953); and Sinlao v. United States, 106 U.S.App.D.C. 263, 271 F.2d 846 (1959), appear to be to the contrary. To the extent that these cases conflict with the Wellman holding as to the meaning of § 211(a), they are expressly overruled.
 
 
 51
 The Van Horne case holds that the Administrator's discontinuance of a veteran's benefits is a decision by him concerning a claim for benefits within the meaning of the [then] non-reviewability statute. It made this assumption without discussing or discerning the fact that a claim asserted by a veteran differs basically and widely from a termination by the Administrator of benefits awarded pursuant to a claim already allowed. This difference is clearly pointed out by Wellman v. Whittier, in the face of which the Van Horne case can no longer be regarded as authority.
 
 
 52
 In like manner, Hahn v. Gray treats the Administrator's termination of benefits as a decision of law or fact concerning a claim, and so fails to recognize the distinction carefully set out in the later case of Wellman v. Whittier between a veteran's claim and a termination of benefits by the ex parte action of the Administrator.
 
 
 53
 In the Sinlao case a divided court held that the Administrator's termination of benefits is unreviewable. There, the Administrator terminated payments of death benefits to a soldier's widow who had not remarried, because of his mistaken notion that, by her immoral conduct, the widow was "estopped to deny remarriage," although he admitted remarriage had not in fact occurred.
 
 
 54
 That opinion treated the Administrator's termination of payments as a rejection of a compensation claim, thus disregarding the holding of the Wellman case less than 18 months before. Although the majority did say, "The Administrator's rejection of appellant's compensation claim[2] cannot be reconciled with the intention Congress has expressed," they proceeded to apply § 211 (a) in violation of the Wellman ruling. The opinion then added, "The Administrator may of course correct his own error if he sees fit."
 
 The Sinlao majority also said:
 
 55
 "* * * Even in Wellman v. Whittier, 104 U.S.App.D.C. 6, 259 F.2d 163, 169, on which appellant relies, we said: `We have repeatedly recognized that non-reviewability must be accorded to the Administrator's decisions as to claims.'"
 
 
 56
 This quotation from Wellman v. Whittier is misleading because it is incomplete. Immediately after the quoted sentence, the Wellman opinion said:
 
 
 57
 "* * * But we are not here concerned with a `claim' by a veteran, but with action by the Administrator working the forfeiture of an already adjudicated award." (Emphasis in original.)
 
 
 58
 This significant sentence was omitted in the Sinlao opinion.
 
 
 59
 As the District Court did not follow the Wellman holding, its judgment must be set aside.
 
 
 60
 Reversed.
 
 
 
 Notes:
 
 
 [1]
 The complaint does not explain why the Veterans Administration made this ruling, nearly twelve years after the termination of the 1948 award, or why it was determined Tracy was "permanently or totally disabled from November 7, 1960." As the Veterans Administrator did not file an answer but relied on his motion to dismiss, the record does not show why this tardy resumption of benefits occurred
 
 
 [2]
 Of course, the Administrator's action was not a "rejection of appellant's compensation claim," but a wrongful termination of death benefits theretofore properly awarded