**Frank CIELICZKA, Plaintiff,**

v.

**Donald E. JOHNSON, Administrator for the Veterans Administration, Defendant.**

**Civ. A. No. 39251.**

United States District Court, E. D. Michigan, S. D.

Aug. 15, 1973.

Michael R. Dunn, Dietrich & Shrauger, Detroit, Mich., for plaintiff.

Ralph B. Guy, Jr., U. S. Atty., Michael D. Gladstone, Asst. U. S. Atty., Detroit, Mich., for defendant.

## MEMORANDUM OPINION

FEIKENS, District Judge.

### Facts

Plaintiff served in the armed forces of the United States from 1942 through 1945. In December 1945, following his discharge, he filed a claim for disability benefits because of flat feet. This claim was denied. In 1948 the case was reopened, and his condition was found to be service connected but nondisabling, and therefore noncompensable.

Plaintiff claims that additional medical evidence was necessary for him either to appeal this decision effectively or to later reopen the case. Because he could not afford the examinations and reports which would have supported his claim, he did not appeal. The claim was reopened in 1964, and plaintiff ultimately received a ten-percent disability rating, dating from December of 1964. He then appealed, contending that the disability should have been assigned as of the date of his discharge in 1945. This appeal was denied.

Plaintiff now sues an officer of the Veterans Administration claiming that the only reason he was unable to prove his disability in 1945 and 1948 was his financial condition, which made it impossible to obtain the necessary medical evidence; that by refusing to have him examined at their expense the Veterans Administration was guilty of a discriminatory application of the law; and that this discrimination based on wealth violates constitutional guarantees of due process and equal protection.

Defendant moves to dismiss on the grounds that this court lacks subject matter jurisdiction; that plaintiff fails to state a claim upon which relief can be granted; and that defendant is immune from suit as a federal official acting within the scope of his employment.

### Jurisdiction

At the outset, this court is confronted by 38 U.S.C. § 211(a) which largely precludes judicial review of decisions of the Veterans Administration awarding or denying benefits.[1] Prompted perhaps

1. "On and after October 17, 1940, except as provided in sections 775, 784, and as to matters arising under Chapter 37 of this title, the decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents for survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise." 38 U.S.C. § 211(a) (Supp.1973).

by a reluctance to deny review of administrative decisions,[2] the courts have found some exceptions in previous versions of Section 211(a). In addition to cases falling within the statutory exceptions,[3] review was often granted where the Government sought to recover or set off benefits previously paid, when the payments were claimed to have been erroneously made. *See, e. g.*, Di Silvestro v. United States, 405 F.2d 150 (2d Cir. 1968), and cases cited at 154. Another line of cases in the District of Columbia Circuit permitted review of decisions terminating benefits previously awarded by the agency. Wellman v. Whittier, 104 U.S.App.D.C. 6, 259 F.2d 163, 168–169 (1958); Thompson v. Gleason, 115 U.S.App.D.C. 201, 317 F.2d 901, 907 (1962); Tracy v. Gleason, 126 U.S. App.D.C. 415, 379 F.2d 469, 472–474 (1967). It is significant, however, that in neither instance was the judicially created exception grounded on a theory of the inability of Congress to deny review in such cases. Rather, the statutory language, which prior to 1970 precluded review of decisions "concerning a claim for benefits or payments," [4] was narrowly limited to cases involving denial of a claim in the first instance.

Thus, even though the scope of Section 211(a) has been variously interpreted, the power of Congress to preclude review of cases within its conceded ambit has never been denied. This judicial acquiescence rests in large part on the theory that "veterans' benefits are gratuities and establish no vested rights in the recipients so that they may be withdrawn [or at least withheld] by Congress at any time and under such conditions as Congress may impose." Milliken v. Gleason, 332 F.2d 122, 123 (1st Cir. 1964), *cert. denied* 379 U.S. 1002, 85 S.Ct. 723, 13 L.Ed.2d 703 (1965). *See* Lynch v. United States, 292 U.S. 571, 576–577, 54 S.Ct. 840, 78 L.Ed. 1434 (1934). Although the continued vitality of this right-privilege distinction is increasingly suspect in many areas, it remains a viable barrier to review under Section 211(a).

█ It is against this background that Congress in 1970 moved to amend Section 211(a) by striking the reference to claims for benefits.[5] Its intent was quite clearly to plug the loophole created by *Tracy* and its predecessors,[6] and its effectiveness in so doing was recently acknowledged by the District of Columbia Circuit in De Rodulfa v. United States, 149 U.S.App.D.C. 154, 461 F.2d 1240, 1244–1258 (1972). As a result, the decisions of the Veterans Administration appear to be fully isolated from review, at least in the absence of "action so egregiously discriminatory and procedurally unfair as to require a judicial re-examination of the constitutionality" of the statute. Hernandez v. Veterans Administration, 467 F.2d 479, 480 (9th Cir. 1972), *cert. granted*, 411 U.S. 981, 93 S.Ct. 2267, 36 L.Ed.2d 957 (1973). Given the previously uniform acceptance of the statute's constitutionality, it would seem that an allegation of constitutional infirmity in a particular administrative action is not a sufficient basis for avoiding the effect of Section 211(a).

Plaintiff in this case is therefore in a precarious position. This is especially

---

2. *See, e. g.*, the discussion and cases collected in Brotherhood of Railroad Trainmen v. Central of Georgia Ry., 415 F.2d 403, 413 n. 20 (5th Cir. 1969). *See generally* K. Davis, Administrative Law Treatise §§ 28.01–.21 (1958, 1970).

3. The exceptions contained in 38 U.S.C. §§ 775 and 784, and in 38 U.S.C. Ch. 37, concern contract matters (insurance; home, farm and business loans).

4. The immediate predecessor to the present Section 211(a) provided that, with certain exceptions, "the decisions of the Administrator on any question of law or fact *concerning a claim for benefits or payments* under any law administered by the Veterans Administration shall be final and conclusive. . . . " Act of Sept. 2, 1958, Pub.L. 85–857, 72 Stat. 1115 (emphasis added).

5. Act of Aug. 12, 1970, Pub.L. 91–376, § 8(a), 84 Stat. 790.

6. *See* H.Rep.No.91–1166, 91st Cong., 1st Sess. 10–11 (1970).

true where his suit attacks exactly the sort of activity which under even the most restrictive interpretations of Section 211(a) was never held reviewable —the original denial of a claim for benefits. There is, however, one possible, latent defect in the jurisdictional argument. The United States Supreme Court has recently granted certiorari in *Hernandez, supra,* 411 U.S. 981, 93 S.Ct. 2267. The questions presented to the Court in that case involve the effect of Section 211(a) upon a constitutional challenge to certain portions of the Veterans' Readjustment Benefits Act (41 U.S.L.W. 3363), and its decision would most likely be controlling in this case. While recognizing that a reversal of the pattern of deference to congressional intent concerning Section 211(a) established in the lower courts is unlikely, this court is nevertheless hesitant to place full reliance on the claimed jurisdictional deficiency.

A more prudent course of action would be to consider plaintiff's claims on the merits as well.

### Failure To State A Claim

Plaintiff's case rests upon the contention that discrimination based on wealth violates constitutional guarantees of equal protection.[7] Initially, he argues that wealth is a suspect classification, justifiable only upon a showing of a compelling state interest.

It is clear that classifications based on race [8] and alienage [9] fall within the suspect category. Although other criteria have been suggested as similarly disfavored, the evidence is at best mixed.

There are cases in which the Supreme Court has indicated that wealth might be a suspect classification. *See* McDonald v. Bd. of Election Comm'rs, 394 U.S. 802, 806–807, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); Harper v. Bd. of Elections, 383 U.S. 663, 668, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); Douglas v. California, 372 U.S. 353, 355, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Griffin v. Illinois, 351 U.S. 12, 19, 76 S.Ct. 585, 100 L.Ed. 891 (1956). However, these references have always been in the context of a simultaneously infringed-upon fundamental right. The wealth criterion *per se* has never been unequivocally condemned by the Court,[10] and when squarely presented with the issue in San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), it declined to so hold (411 U.S. at 18–28, 93 S.Ct. 1288–1294). On the other hand, the Court did not foreclose the possibility that classifications based on wealth might in some circumstances require strict scrutiny. After noting that the situation in *Rodriguez* was in many ways *sui generis* (411 U.S. at 17, 93 S.Ct. at 1278), Mr. Justice Powell proceeded to apply the more lenient equal protection test because the discrimination involved did not affect what the Court has previously referred to as a "discrete and insular minority." Gordon v. Lance, 403 U.S. 1, 5, 91 S.Ct. 1889, 29 L.Ed.2d 273 (1971).

"However described, it is clear that appellee's suit asks this Court to extend its most exacting scrutiny to review a system that allegedly discriminates against a large, diverse, and amorphous class, unified only by the common factor of residence in dis-

---

7. Although in the complaint plaintiff refers to both due process and equal protection, and in his brief engages in equal protection analysis under the due process rubric, there is ·no doubt that his claim is essentially based on a denial of equal protection.

8. *See, e. g.,* Loving v. Virginia, 388 U.S. 1, 9, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1969).

9. *See, e. g.,* Graham v. Richardson, 403 U.S. 365, 372, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971).

10. "[T]his Court has never heretofore held that wealth discrimination alone provides an adequate basis for involving strict scrutiny. . . . " San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 29, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973).

tricts that happen to have less taxable wealth than other districts. The system of alleged discrimination and the class it defines have none of the traditional indicia of suspectness: the class is not saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." 411 U.S. at 28, 93 S.Ct. at 1294 (footnote omitted).

■■ The inevitable conclusion to be drawn from this is that discrimination according to wealth, standing alone, is rarely if ever sufficient to necessitate the application of the strict standard of review. Although the Court implies that a compelling state interest will be required where wealth discrimination affects a discrete and insular minority, such classifications will almost always involve one of the traditionally suspect categories of race or alienage. Likewise, where the discrimination affects a fundamental right, such as the right to vote[11] or the right of access to the courts,[12] the fact that the classificatory scheme is wealth-related is superfluous in terms of justifying strict scrutiny. Such a standard would be applicable in any event. Perhaps the most that can be said in this regard is that where there are other grounds for requiring a compelling state interest, discrimination on the basis of wealth will be sufficiently disfavored to fail the test.

■■ In the instant case, it is clear that there are no independent grounds for invoking the strict standard of review. The right to receive veterans'

benefits, if indeed it rises to that level of entitlement,[13] is clearly not fundamental. Social or economic importance is not enough to create such a right. *See* Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972); Dandridge v. Williams, 397 U.S. 471, 90 S. Ct. 1153, 25 L.Ed.2d 491 (1970). "Rather, the answer lies in assessing whether there is a right . . . explicitly or implicitly guaranteed by the Constitution." *Rodriguez, supra*, 411 U.S. at 33, 93 S.Ct. at 1297. Obviously, the answer here must be that there is no such guarantee.

Conversely, there is no evidence that the requirement of procuring medical examinations and reports as a prerequisite to reconsideration of a claim for benefits affects in any way a discrete and insular minority. It is most unlikely that such a showing could be made.

■ Applying, therefore, the traditional rational basis test, this court can find no possible grounds for holding the challenged practice to be a denial of equal protection. It is simply not unreasonable to expect an applicant to furnish some additional proof where an initial determination has gone against him; nor is it unreasonable to require that he shoulder the financial burden of doing so. A rule may impose proportionately greater burdens on the less wealthy without forfeiting its rational relationship to a legitimate objective.

Because plaintiff has failed to state a claim upon which relief may be granted, the motion to dismiss must be granted. Defendant's claim of immunity need not be reached.

11. McDonald v. Bd. of Election Comm'rs, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); Harper v. Bd. of Elections, 384 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966).

12. Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Griffin

v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

13. *See* text, *supra*, at 455.